UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

CRAIG PRENDOTA and GALEN DENLER,
    Plaintiff,

vs.        06-1207,

ROGER WALKER, et.al.,
    Defendants.

## SUMMARY JUDGEMENT ORDER

This cause is before the court for consideration of Defendant Jennifer Melvin's motion for summary judgement. [d/e 36].

### I. BACKGROUND

The pro se plaintiffs, state prisoners, filed their complaint pursuant to 42 U.S.C. §1983 claiming their constitutional rights were violated at Pontiac Correctional Center. The plaintiffs have named three defendants: Illinois Department of Corrections Director Roger Walker, Illinois Department of Corrections Regional Director Guy Pierce and Pontiac Correctional Center Warden Eddie Jones.

The plaintiffs allege that the defendants violated their Eighth Amendment rights when they did not provide the plaintiff's with adequate winter clothing from December of 2005 through the Spring of 2006. The plaintiffs say on several occasions they were forced to choose between yard time and being outside in extreme temperatures without proper clothing. They say they were forced to go outside to attend school or participate in visitation. The plaintiffs say they were told they could buy hats, gloves and other winter clothing in the commissary, but the plaintiffs say they are indigent and could not afford the needed clothing.

The defendants originally filed a motion for summary judgement on September 17, 2007. [d/e 30] and the plaintiffs filed a response. [d/e 33]. However, both parties had also filed motions to compel. Each side was ordered to provide additional information to the other. Therefore, the court struck the original dispositive motions and gave the parties additional time to file or renew their motions. *See* March 7, 2008 Court Order.

The defendants filed their renewed motion for summary judgement on April 17, 2008. [d/e 36] The plaintiffs were notified of the motion, but have filed no response. Since the plaintiffs are proceeding pro se and the defendants renewed their earlier motion, the court will also consider the plaintiffs initial response to the motion. [d/e 33].

### II. FACTS

1

Correctional Lieutenant Dennis Dahlbach says he has been with the Department of Corrections at Pontiac Correctional Center since 1985. Dahlback maintains that department policy requires that inmates receive clothing that is suitable for the season. (Def. Memo, Dahl. Depo, p. 1)

Department of Corrections records demonstrate that Plaintiff Prendota entered Pontiac Correctional Center on September 21, 2005 and Plaintiff Galen Denler arrived on November 2, 2005. Both were housed in South Protective Custody. Each plaintiff was issued the following clothing upon arrival: 3 pairs of pants, 3 shirts, 3 T-shirts, 3 briefs, 3 socks, 1 pair of shoes and 1 coat. (Def. Memo, Ex. 2, 3). Dahlback states that inmates may also purchase additional items such as ear warmers, thermal tops and bottoms, sweatpants, sweatshirts and gloves from the Commissary. (Def. Memo, Dahl. Depo, p. 1). The parties have provided documentation showing that ear warmers can be purchased for $1.62, gloves for $1.25, sweatshirts for $8.57 to $20.60, sweat pants for $8.56 to $27.04, Thermal shirts from $5.73 to $9.01 and thermal pants from $5.48 to $9.01. (Def. Memo, Ex. 1, Plain. Resp. Ex D).

Dahlbach states that prior to being escorted outside the cell house, each inmate and the clothing he intends to wear are search for contraband.

> Offenders are not permitted to wear multiple layers of the same clothing items outside of their cells to ensure the safety and security of all offenders and staff. In the past, offenders have tried to conceal weapons, drugs, money, and other dangerous contraband within multiple layers of the same type of clothing. Offenders have also attempted to create defense apparel by placing cardboard or magazines in between multiple layers of the same clothing items. (Def. Memo, Dahl. Depo, p. 1).

Dahlbach says inmates that are in protective custody, such as the plaintiffs, receive 8 to 10 hours of recreation weekly in four sessions that last 2 ½ hours each. Inmates are not required to go outdoors. Dahlbach says those that choose to stay inside have adequate space to do sit-ups, push-ups, stretches, calisthenics and they can also run in place. (Def. Memo, Dahl. Depo, p. 2).

Dahlbach says the visitation room at Pontiac Correctional Center is located in the Administrative Building. The distance between the South Cell House to this building is approximately two blocks. "On average, it takes approximately seven minutes to escort an offender from the South Protective Custody Unit to the Administrative Building." (Def. Memo, Dahl. Depo, p. 2). Dahlbach also says inmates are not required to go to visitation.

Dahlbach says inmates may choose to participate in MacMurray College's Vocational Culinary Arts Program. Plaintiff Prendota participated in the program from December 1, 2005 to September 25, 2006. The program is located in the old Clinical Services Building. Dahlbach says the distance from the South Cell house to this building is about two blocks and takes on average, about seven minutes to escort an inmate from one building to the other. (Def. Memo,

Dahl. Depo, p. 2).

Chairperson of the Office of Inmate Issues, Sherry Benton, says she has reviewed the records of the Administrative Review Board. Benton says both plaintiff's filed grievances concerning clothing and the grievance process was completed on September 13, 2007. Benson says both of the grievances bear the signature of Defendant Walker. However, Benton says "the signature was affixed by Terri Anderson on Director Walker's behalf." (Def. Memo, Benton. Depo, p. 3). Benson adds that Anderson had "authority to review and sign on the director's behalf as an administrative designee." (Def. Memo, Benton. Depo, p. 3). Benton says Defendant Walker did not receive, review or respond to the plaintiffs grievances or any correspondence addressed to him. (Def. Memo, Benton Aff, p. 3)

### III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56c. Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

### IV. ANALYSIS

### A. DEFENDANT WALKER

The defendants have persuasively demonstrated that Defendant Illinois Department of Corrections Director Roger Walker had no personal involvement in the plaintiffs' allegations. Defendant Walker may use a designee to review the thousands of grievances that are processed within the Illinois Department of Corrections and the defendants have demonstrated that a designee was used in this case. "(A) defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established in order for liability to arise under 42 U.S.C. §1983." *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981). In addition, the doctrine of *respondeat superior* (supervisor liability) does not apply. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "(A) supervising prison official cannot incur §1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right." *Vance v Peters,* 97 F.3d 987, 992 (7th Cir. 1996). Therefore, the court will dismiss defendant Walker.

B. EIGHTH AMENDMENT

The defendants argue that the plaintiffs have failed to show that the defendants have subjected them to cruel and unusual punishment in violation of the Eighth Amendment. The plaintiffs must pass both an objective and a subjective test in order to establish that the conditions of their confinement violated the constitution. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). The plaintiffs must first demonstrate that the alleged deprivations were "sufficiently serious." *Wilson*, 501 U.S. 298. Only conditions involving the denial of the "minimal civilized measure of life's necessities" rise to the level of a constitutional violation. *Rhodes*, 452 U.S. at 347. The plaintiff must also show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42).

The defendants have provided adequate evidence that they do not allow inmates to layer their clothing due to security concerns, a valid penological interest. However, the plaintiffs argue that the clothing they are allowed to wear is not sufficient. The plaintiffs say they are provided inadequate clothing for yard exercise time and inadequate clothing to go to and from visitation and school. The plaintiffs say courts have held that prison officials violate the Constitution when they provide inmates with clothing that is "patently insufficient to protect [them] from the cold in the winter months." *Balla v Idaho St. Bd. of Corrections,*595 F. Supp. 1558, 1575 (D. Idaho 1984); *See also Knop v Johnson,* 667 F.SUPP 467, 475 (W.D. Mich. 1987)( inmates exposed to harsh winter conditions without proper winter clothing may suffer "inflictions of pain" that are "totally without penological justification.)

The defendants argue that the plaintiffs' case is not analogous to the cases they have cited. First, the defendants state these plaintiffs are not required to go outside during harsh weather conditions. For instance, the defendants maintain that if the weather is too cold for outdoor exercise time, the inmates may exercise in their cells. The plaintiffs do not contest that they have the option to exercise in their cells, but maintain that if they chose to go outside, the defendants must provide proper clothing. The court disagrees. The plaintiff's have not

4

demonstrated that they are denied all exercise and have not demonstrated that they are forced to go outside in extreme cold.

Second, the defendants also state that if the plaintiffs chose to participate in visitation or school, the distance traveled is minimal.   The plaintiffs have not disputed this claim.

The court also notes that the plaintiffs have not provided any evidence that they were harmed as a result of the alleged inadequate clothing.  While the plaintiffs are certainly not required to show they suffered from severe illness, they have not proffered any evidence of any harm.

Lastly, both sides have provided the court with the minimal costs of additional winter clothing if the plaintiffs wished to purchase these items.  For instance, ear warmers can be purchased for $1.62 and gloves are sold for $1.25.   The court notes that when the plaintiffs filed their lawsuit, they had to provide the court with the last six months of their trust fund ledgers.  Plaintiff Prendota had a balance of $50.40 on February 2, 2006 and Plaintiff Denler had a starting balance of $10.42 on February 22, 2006.  The plaintiffs have not provided evidence that they were prevented from purchasing these items.

The motion for summary judgment is granted.

**ITS IS THEREFORE ORDERED that:**

**1) The defendants' renewed motion for summary judgement  is granted pursuant to Fed. R. Civ. P. 56. [d/e 36]   The clerk of the court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) If the plaintiffs wish to appeal this dismissal, they may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiffs plan to present on appeal.  See Fed. R. App. P. 24(a)(1)©.  If the plaintiffs do choose to appeal, they will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.  Furthermore, if the appeal is found to be non-meritorious, the plaintiffs may also accumulate a strike under 28 U.S.C. 1915(g).**

**3) The agency having custody of the plaintiff is directed to remit the docketing fee of $350.00 from each plaintiff's prison trust fund account if such funds are available.  If the plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the plaintiff's trust fund account to the clerk of court each time the plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.**

**4) The plaintiffs must notify the clerk of the court of a change of address and phone number within seven days of such a change.  Release from incarceration does not relieve a plaintiff of his obligation to pay the filing fee in full.**

**5) The clerk is directed to mail a copy of this order to the plaintiffs place of confinement, to the attention of the Trust Fund Office.**

Entered this 18th day of March, 2009.

        **s\Harold A. Baker**

_____
      HAROLD A. BAKER
    UNITED STATES DISTRICT JUDGE